UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cargill, Inc.,                                                      Civ. No. 11-2394 (PAM/JJK)

                Plaintiff,

v.                                                  **MEMORANDUM AND ORDER**

Ron Burge Trucking, Inc. and
National Interstate Insurance Corp.,

                Defendants.

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment. For the reasons that follow, the Motion is denied.

**BACKGROUND**

In 2006, Plaintiff Cargill, Inc. and Defendant Ron Burge Trucking, Inc., entered into a Motor Transport Agreement for the hauling of certain Cargill products. The Motor Transport Agreement contained specific rules about what loads Burge could haul before hauling a load of food-grade salt, and how Burge had to wash its trucks before loading them with the salt.

In April 2010, Burge Trucking hauled a load of food-grade salt from Cargill's facility in Akron, Ohio, to Cargill's customer Leprino Foods Company in Remus, Michigan. Leprino used the salt to make a brine solution to "cure" batches of mozzarella cheese. Burge Trucking had, contrary to the Motor Transport Agreement, hauled roofing aggregate in the truck before loading the truck with Cargill's salt. Leprino ultimately used the contaminated

salt to produce nearly a million pounds of mozzarella cheese, which Leprino discarded. Leprino submitted a claim to Cargill in the amount of $2.4 million for the allegedly ruined cheese, and also refused to order any products from Cargill for nearly two years.

Burge initially denied that it hauled roofing aggregate in the truck before hauling Cargill's salt, and submitted to Cargill what purported to be the bill of lading for the previous load showing that the load was limestone, which was permitted under the Motor Transport Agreement. However, Burge eventually admitted that the truck involved here had hauled roofing aggregate before hauling Cargill's salt. Apparently, part of the mistake was that Burge classifies all material from the supplier of the previous load as limestone, even though this supplier (ISP Minerals) supplies all kinds of different rocks and minerals, and despite the fact that ISP Minerals's bill of lading for the previous load stated that the load was roofing aggregate.

Cargill ultimately settled Leprino's claims against it for $1.6 million, including a provision that Cargill would become the exclusive supplier of Leprino's salt nationwide. Cargill then brought this lawsuit, raising nine claims against Burge and three claims against National Interstate Insurance Corporation, Burge's insurer. Cargill now seeks partial summary judgment on some of its claims against Burge: breach of contract, breach of express and implied warranties, negligence, misrepresentation, and a claim for common law or contractual indemnity. Cargill also seeks summary judgment on two of Leprino's claims

against Burge, for breach of warranty and negligence.[1] The only claim against Burge on which Cargill does not ask for judgment is Count IX, for contribution.

Burge tells a different story, pointing out that Cargill inspected the trailer before the salt was loaded into it and found no problems, and also that the salt delivered to Leprino was mixed with another load of salt before being used to make the cheese. (Cargill contends that this is not borne out by the record, which shows the salt hoppers at Leprino were empty when Cargill's salt was unloaded from Burge's truck.) In addition, Leprino discovered the rock granules in the brine five days before discontinuing production of the cheese, and in fact stopped production only when a magnet found a staple in the brine solution. Finally, when Burge tested the cheese, it found no rocks whatsoever in the cheese itself.[2]

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not

---

[1] The settlement agreement between Leprino and Cargill assigned to Cargill all of Leprino's claims against Burge.

[2] The Court notes with some concern Magistrate Judge Steven E. Rau's comments on the issue of discovery with respect to both the allegedly contaminated salt and cheese. (See Oct. 23, 2012, Order (Docket No. 126) at 5 n.2.) Not only is the failure to produce the salt and cheese a likely violation of Cargill's discovery obligations, but that failure also arouses suspicions about the merits of Cargill's claims here.

as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.     Breach of Contract**

Cargill contends that Burge breached the Motor Transport Agreement by hauling roofing aggregate immediately before hauling Cargill's salt. Cargill seeks summary judgment only on Burge's liability for breach of the parties' agreement, not on the amount of damages Cargill suffered as a result of the alleged breach.

Burge argues that Cargill has failed to establish an essential element of its breach of contract claim, namely that any alleged breach actually caused Cargill's losses. As Burge notes, Leprino did not stop using the allegedly contaminated salt for five days after first discovering the contamination. In addition, Burge points to Cargill's inspection of the trailer as a potential intervening cause of damages. And finally, Burge notes that, at least in the cheese it tested, there were no granules found, so that the cheese was not itself affected by the alleged contamination in the brine.

While there is no question that Burge breached the contract, there are questions of fact as to whether that breach was the proximate cause of Cargill's (and Leprino's) damages. Indeed, Cargill's statement at the hearing that Burge could argue causation to the jury admits that there are questions regarding causation. But causation is an essential element of Cargill's breach of contract claim. In other words, if there are questions of fact as to causation, summary judgment on the breach of contract claim is not appropriate. Cargill's Motion on this claim is denied.

**B.     Breach of Warranties**

In the Motor Transport Agreement, Burge agreed that it would be responsible for loss or damage to any product it transported, and that it would provide trucks that were in "good, clean, and sanitary condition, free of contaminants and suitable for hauling Cargill's products." (Agreement § 4(E), (J).) In addition to these "warranties" in the Motor Transport Agreement, Cargill contends that Burge breached its implied warranty of fitness for a particular purpose. Again Cargill seeks judgment only as to Burge's liability, not the amount of damages.

Burge argues that express and implied warranties apply only in the sale-of-goods context, and this was a contract for services. In its reply, Cargill argues that even a contract for services includes "any implied duty to perform the work or services skillfully, carefully, and in a workmanlike manner." (Pl.'s Reply Mem. at 14 (quoting Pioneer Enters., Inc. v. Edens, 216 Neb. 672, 674 (Neb. 1984).) But even if Minnesota recognizes this supposed "duty," a duty is not a warranty. Rather, this duty is a duty of care that goes to whether a

5

negligence action, in addition to a breach-of-contract action, will lie.

Cargill's argument with respect to this claim stretches the law too far. Cargill cites a Minnesota case as alleged support for the statement that "[t]he implied warranty of workmanlike performance requires the promisor to use due care." (Id. (citing Arden Hills North Homes Ass'n v. Pemtom, Inc., 475 N.W.2d 495, 500 (Minn. Ct. App. 1991).) But the Pemtom case does not ever mention the word "warranty," and indeed discusses this duty of workmanlike performance in the context of a discussion of a negligence claim, not any breach of warranty claim.

Cargill has not established that there were any warranties, either express or implied, involved in this case. The Motion is therefore denied.

**C.     Negligence**

Cargill next argues that the bailment relationship imposes duties of care that sound in negligence as well as the duty that arises by virtue of the parties' contract. But all of the cases on which Cargill relies for this proposition were decided before the Minnesota Supreme Court's recent pronouncement on the issue in Glorvigen v. Cirrus Design Corp., 816 N.W.2d 572 (2012). Glorvigen held that when a contract imposes the only duties between the parties, a negligence action will not lie. Thus, the question is whether there are duties imposed by law on Burge, separate from the duties imposed by contract, because "a party is not responsible for damages in tort if the duty breached was merely imposed by contract and not imposed by law." Id. at 584.

In this case, the "duties" Cargill is claiming Burge breached are the same duties the Motor Transport Agreement imposed: to clean the trailer, not to haul unapproved loads immediately before hauling Cargill's loads, and so on. Cargill has not pointed to any duty that is separate from those contained in the contract between the parties. As Cargill has framed its negligence claim, that claim is not cognizable under Minnesota law. Cargill's Motion on its negligence claim is denied.

**D.     Misrepresentation**

This claim arises out of Burge's alleged failure to tell Cargill that the previous load contained roofing aggregate, instead reporting that it contained limestone. Burge contends that this tort claim is barred by the Glorvigen rule that negligence claims that arise out of the contract are not cognizable. But this is an overgeneralization of the law in Minnesota. Rather, whether a misrepresentation claim exists in the context of a commercial transaction depends on the facts of the case: "the presence of a governing commercial contract neither preempts nor eliminates the need for all fraud claims to which the parties' dealings may give rise." AKA Distrib. Co. v. Whirlpool Corp., 137 F.3d 1083, 1086 (8th Cir. 1998) (discussing viability of fraud and misrepresentation in UCC Article 2 cases). Thus, a misrepresentation that is collateral to the contract may be actionable regardless of the existence of the contract. Id.

Here, however, the misrepresentation at issue is not collateral to the contract. Instead, the misrepresentation is about the very basis for the breach-of-contract claim. Such a claim is not cognizable here, and Cargill's Motion is denied.

### E. Indemnity

The Motor Transport Agreement contains an express indemnity clause in which Burge agreed to indemnify Cargill for "injury, damages, or losses" arising from Burge's performance or attempted performance of [the Motor Transport Agreement]; or "any negligent, reckless or willful misconduct" or "any act or omission" of Burge or its employees; or "the breach of any obligation" under the Motor Transport Agreement. (Agreement § 8.) Cargill's argument on this point is that it has established that Burge breached the Motor Transport Agreement, and thus Burge is obligated to indemnify Cargill. But as discussed above, there are questions of fact as to whether Cargill can make out all of the elements of its breach-of-contract claim, and thus Cargill is not entitled to judgment at this stage on its indemnity claim.

### F. Leprino's Claims

As with the indemnity claim, Cargill's arguments about Leprino's claims are that, because Cargill is entitled to summary judgment on its claims for breach of warranties and negligence, Leprino's claims are also a matter for summary judgment. But as discussed above, Cargill is not entitled to judgment on its warranty and negligence claims, so summary judgment is not appropriate on Leprino's similar claims.

**CONCLUSION**

  Cargill has not established that it is entitled to summary judgment at this stage of the litigation.  Accordingly, **IT IS HEREBY ORDERED that** Plaintiff's Motion for Partial Summary Judgment  (Docket No. 128) is **DENIED**.

Dated: <u>February 19, 2013</u>

                  <u>*s/ Paul A. Magnuson*</u>
                  Paul A. Magnuson
                  United States District Court Judge